IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

CHRISTOPHER B. McKEITHEN,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-0105

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION .................................. 2

II.  PRINCIPLES OF REVIEW ........................... 2

III. FACTS ......................................... 4
    A.  McKeithen's Education and Employment Background .......... 4
    B.  Vocational Expert's Testimony from the April 2, 2013
       Administrative Hearing ............................. 4
    C.  McKeithen's Medical History ....................... 5

IV. CONCLUSIONS OF LAW ............................. 8
    A.  ALJ's Disability Determination ..................... 8
    B.  Objections Raised By Claimant .................... 11

V.  CONCLUSION .................................. 16

VI. ORDER ....................................... 16

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Christopher B. McKeithen on September 22, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] McKeithen asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, McKeithen requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant

---

[1] On January 2, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d

1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## III. FACTS

### A. McKeithen's Education and Employment Background

McKeithen was born in 1983. He is a high school graduate. While in school, he was enrolled in special education programs. After high school, he attended 3.5 years of college, but did not obtain a degree. Later, he attended community college and worked on an Associates Degree.

In the past, McKeithen worked as a automobile detailer, cashier, kitchen helper, commercial cleaner, and store laborer/stocker.

### B. Vocational Expert's Testimony from the April 2, 2013 Administrative Hearing

At the hearing, the ALJ provided vocational expert Roger Marquardt with a hypothetical for an individual who: (1) has no physical limitations, (2) requires limited interactions with others, including no interaction with large groups of people, (3) is limited to routine, structured, predictable work, (4) is able to perform more than just one and two-step job tasks, and (5) cannot work at a production rate pace.[2] The vocational expert testified that under such limitations, McKeithen could perform his past relevant work as

---

[2] *See* Administrative Record at 59-60.

4

an automobile detailer, kitchen helper, commercial cleaner, and store laborer/stocker. The vocational expert also testified that under such limitations, McKeithen could perform the following additional jobs: (1) payroll clerk, (2) production clerk, (3) deposit-refund clerk, (4) housekeeping cleaner, (5) lot attendant, and (6) non-postal mail clerk. The ALJ provided the vocational expert with a second hypothetical which was identical to the first hypothetical except that the individual would also miss work three or more times per month. The vocational expert testified that such an additional limitation would preclude competitive employment.

### C. McKeithen's Medical History

On November 29, 2011, McKeithen was referred by Disability Determination Services ("DDS") to Kevin Krumvieda, Ph.D., for a psychological evaluation. In his report, Dr. Krumvieda reviewed McKeithen's employment history and workplace difficulties:

> [McKeithen] states that he is good at obtaining work but has difficulty focusing. He noted that something will stress him (usually being criticized) which will then bring his focus to the criticism and not on his work. He will be spending quite a bit of time thinking how to defend himself against the criticism. . . . He will become frustrated at work and call in sick. He then does not go to work. He is let go for unexcused absences. This has been his employment pattern since 2004.

(Administrative Record at 377.) With regard to his psychiatric history, Dr. Krumvieda noted that McKeithen has been treated for ADHD since elementary school, and takes medication for anxiety. McKeithen also reported that in the past, he participated in psychotherapy and found it beneficial. Upon examination and testing, Dr. Krumvieda diagnosed McKeithen with Asperger's disorder and adjustment disorder with anxiety. Dr. Krumvieda opined that McKeithen's anxiety is primarily associated with work situations. Dr. Krumvieda concluded that:

5

> Limitations to Mr. McKeithen's ability to work, then, are contingent upon the work environment itself. In a work environment which is critical and somewhat fluid, Mr. McKeithen's ability to attend and concentrate, by his account, becomes markedly limited. His ability to stay on task also becomes markedly limited in those situations. His ability to understand instructions, procedures, and locations is enhanced in work situations where his duties are routinized and he is provided positive reinforcement for his work. In work environments where this is not the case, his ability to carry out procedures, by his self-report, is markedly impaired. His ability to remember locations appears moderately impaired; he became lost trying to locate our office and called for directions. His inability to interact appropriately with supervisors, coworkers, and the public appears markedly impaired in situations that involve fluidity and criticism. His ability to use good judgment and respond appropriately to changes in the workplace is markedly impaired given his self-reported increase in anxiety in employments that are less routinized.

(Administrative Record at 379.)

On January 25, 2012, McKeithen met with Dr. Mark W. Mittauer, M.D., for admission to the Abbe Center for a Community Mental Health outpatient psychiatric program in Cedar Rapids, Iowa. Dr. Mittauer noted the following symptoms for McKeithen: difficulty handling changes in routine, fear of the unknown, and noise sensitivity. Upon examination, Dr. Mittauer diagnosed McKeithen with Asperger's disorder and anxiety disorder. Dr. Mittauer recommended medication and psychotherapy as treatment.

On July 27, 2012, McKeithen met with Dr. Dennis C. Harper, Ph.D., for a psychological evaluation. Dr. Harper noted that McKeithen's primary concern was his inability to maintain employment. Since May 2010, McKeithen had seven different jobs. Dr. Harper indicated that "[b]y his description he has had major difficulties in these job placements following directions, maintaining a work schedule, and 'dealing with

supervisor's directions and comments.'"[3] Dr. Harper further noted that McKeithen "has been in 28 job situations since 2000, the majority of which did not provide any ongoing supports. He had succeeded in several when such supports were offered by his report."[4] Dr. Harper reviewed McKeithen's past treatment for his mental health problems:

> He reports that therapy helps when it assists him in developing coping skills and managing his "life." He functions best when routines are known, the structure remains consistent, and the work setting interactions are supportive and clear and unchanging. He maintains that his desire is to work in a situation with routine structure, limited multi-tasking, and accommodated supports for his efforts.

(Administrative Record at 402.) During two separate interviews on July 27 and August 10, 2012, Dr. Harper found the following characteristics associated with Asperger's Syndrome for McKeithen: lack of social awareness, difficulty making and sustaining friendships, inability to infer thoughts, feelings, or emotions of others, inability to perceive nonverbal cues or communications, unusually sensitive to noises, touch, odors, tastes, or visual stimuli, inflexibility and over-adherence to or dependence on routines, and literal interpretation of language. Dr. Harper also found that McKeithen had ADHD and anxiety disorder, which are psychiatric conditions associated with Asperger's Syndrome. Dr. Harper concluded that:

> [McKeithen's] diagnosis of Asperger's Syndrome is consistent with the opinion of 3 psychological evaluations and the opinions of 3 psychiatrists dating to his early years. His history of anxiety was noted historically as well as child diagnosis of ADHD. His job history does not reflect avoiding work (28 jobs) but very likely is confounded by his Asperger's Syndrome, increased dysfunction by anxiety and his cognitive style reflective of ADHD as well. He does better when the job

---

[3] Administrative Record at 401.

[4] *Id.* at 402.

is routine, structured and predictable. Medications seemed to have assisted in several ways in the past and should be reconsidered. . . . Expecting Mr. McKeithen to attend school and comply with work situations that do not provide significant accommodations are likely to fail and have done so repeatedly over the last few years. By his own admission he has functioned better with therapeutic support emphasizing coping skills and daily planning and adjunctive medication. These aforementioned when combined with appropriate job accommodations are more likely to result in a more successful job outcome. Ongoing treatment, a supportive job coach and medications should be given consideration.

(Administrative Record at 404-05.)

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that McKeithen is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined

to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'"

9

*Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that McKeithen had not engaged in substantial gainful activity since November 1, 2010. At the second step, the ALJ concluded from the medical evidence that McKeithen had the following severe impairments: Asperger's Syndrome, ADHD, anxiety disorder, and depressive disorder. At the third step, the ALJ found that McKeithen did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined McKeithen's RFC as follows:

> [McKeithen] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should have limited interaction with others, and is functionally limited to only occasional interaction with the general public, co-workers, and supervisors. He is limited to no large groups of people but can be around a few people at a time. He can do more than unskilled work, but is limited to work that has a routine structure and is predictable work. He can perform more than one to two-step job tasks, but the performance of this work needs to be where the routines are known, with a consistent structure, and predictable interactions. He cannot work at a production rate pace.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that McKeithen was capable of performing his past work as an auto detailer, kitchen helper, and laborer. In the alternative, at the fifth step, the ALJ also determined that based on his age, education, previous work experience, and RFC, McKeithen could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that McKeithen was not disabled.

## B. Objections Raised By Claimant

McKeithen argues that the ALJ's ultimate RFC assessment is flawed because while she gave considerable weight to the opinions of Dr. Krumvieda and Dr. Harper, both consultative examining doctors, the ALJ failed to include all of their opinions regarding McKeithen's limitations in her RFC assessment for McKeithen. McKeithen also argues that the ALJ's RFC assessment is flawed because she failed to properly consider his need for educational and vocational support, as evidenced by his having 26 jobs in 7 years. Thus, McKeithen asserts that the ALJ's RFC assessment is not supported by substantial evidence. McKeithen concludes that this matter should be remanded for a new RFC determination based on a fully and fairly developed record, including further consideration of Dr. Krumvieda's and Dr. Harper's opinions.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Furthermore, an ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

Finally, an ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In her decision, the ALJ addressed Dr. Krumvieda's opinions as follows:

> Due to limited treatment records, a consultative examination was scheduled to evaluate [McKeithen's] mental conditions. Kevin Krumvieda, Ph.D., Licensed Psychologist, performed the evaluation in November 2011. . . . [McKeithen] reported some impairments in social interaction, including difficulties in intimate interpersonal relationships, difficulties developing

> peer relationships, and some adherence to routines. However, he admitted he performs much better in employment situations where there is a strict routine and a supportive atmosphere with minimal criticism. Dr. Krumvieda commented that limitations to [McKeithen's] ability to work are contingent upon the work environment itself. His ability to understand instructions, procedures, and locations is enhanced in work situations where his duties are routinized and he is provided positive reinforcement for his work. In work environments where this is not the case, his ability to carry out procedures, by his self-report, is markedly impaired. His ability to remember locations appeared moderately impaired. His ability to interact appropriately with supervisors, co-workers, and the public appeared markedly impaired in situations that involve fluidity and criticism. Dr. Krumvieda's opinions are consistent with the record as a whole and are given great weight. The above residual functional capacity takes into account [McKeithen's] need for a routine work structure, which is consistent with his own reports to Dr. Krumvieda and the record as a whole.

(Administrative Record at 16.) Turning to Dr. Harper's opinions, the ALJ stated:

> [McKeithen] sought a clarification of his diagnosis, in part as a request for financial support while continuing as a student at Kirkwood Community College. (Exhibit 10F) Dennis C. Harper, Ph.D., Licensed Psychologist, performed the evaluation in July/August 2012. Testing revealed only mild levels of depression and anxiety. The results of a Wechsler Adult Intelligence Scale-IV test suggested essentially average cognitive functioning, with limitations in memory-focused recall. Dr. Harper noted that [McKeithen's] diagnosis of Asperger's syndrome was consistent with the opinion of three psychological evaluations dating to his early years. . . . Dr. Harper offered opinions similar to Dr. Krumvieda, stating that [McKeithen] did better with jobs that are routine, structured, and predictable. He opined that medications seemed to have assisted in several ways in the past and should be reconsidered. Dr. Harper noted his findings were "identical to the results of the evaluation of 11/22/2011 by

> Dr. Krumvieda." Furthermore, he noted that [McKeithen] acknowledged he had functioned better with therapeutic support emphasizing coping skills and daily planning, with adjunctive medication. Dr. Harper opined that this treatment when combined with appropriate job accommodations was more likely to result in a successful job outcome. In a separate form, Dr. Harper opined that [McKeithen] was unable to attend school and work at the same time. He recommended ongoing job training and a job coach. He indicated he did not recommend that [McKeithen] apply for long-term disability benefits. (Exhibit 10F, 7) Dr. Harper's opinions are consistent with the record as a whole, including another evaluating psychologist. As such, considerable weight is given to his opinions.

(Administrative Record at 17.)

The ALJ also addressed McKeithen's history of educational and vocational support in her decision:

> [McKeithen] received assistance and residency through Tailored Living while he obtained his Associates degree from Kirkwood Community College. He worked with staff to gain independent living skills and to control angry outbursts. . . . A quarterly review prepared in August 2012 indicated [he] had had no major outbursts and had done better in working his way through his frustrations without losing his temper. It was noted [McKeithen] had been looking into job opportunities that would work into his school schedule, but school remained his first priority. . . . He occasionally struggled utilizing coping skills to control his anger and frustration, as well as communicating with others without showing anger and frustration.

(Administrative Record at 16-17.) The ALJ further stated in her decision:

> Treatment records document continued progress with medication and therapy. He was doing well in school and reported feeling well overall in December 2012. . . . His anxiety symptoms were noted to be under control. [McKeithen] reported he was happy with his medications and

requested no changes. [He] consistently maintained GAF scores indicative of only mild symptoms.

(Administrative Record at 17.) Finally, the ALJ noted that:

[McKeithen] experiences some symptoms and limitations; however, the record does not fully support the severity of [his] allegations. [He] has a history of treatment for mental health conditions, but remained stable with medication and therapy. He was able to take classes in a community college and succeed in his school efforts. Records demonstrated some issues with frustration tolerance and getting along with others. [McKeithen] did best with a structured routine, which has been accounted for in the residual functional capacity detailed above.

(Administrative Record at 18.)

Having reviewed the entire record, and having fully considered the ALJ's overall disability determination, the Court finds that the ALJ adequately addressed and weighed the opinions of Dr. Krumvieda and Dr. Harper, both consultative examining sources. Moreover, the Court finds that the ALJ properly considered McKeithen's medical records, observations of treating physicians, and McKeithen's own description of his limitations in making the RFC assessment for McKeithen.[5] See Lacroix, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record, including proper consideration of Dr. Krumvieda's and Dr. Harper's opinions. See Cox, 495 F.3d at 618. Indeed, a simple review of the ALJ's RFC assessment demonstrates that she incorporated McKeithen's need for limited interaction with others, need for vocational support, and need for a structured work environment. Specifically, as part of McKeithen's RFC, the ALJ determined that McKeithen:

should have limited interaction with others, and is functionally limited to only occasional interaction with the general public,

---

[5] Administrative Record at 15-19 (providing thorough discussion of the relevant evidence for making a proper RFC determination).

15

co-workers, and supervisors. He is limited to no large groups of people but can be around a few people at a time. He can do more than unskilled work, but is limited to work that has a routine structure and is predictable work. He can perform more than one to two-step job tasks, but the performance of this work needs to be where the routines are known, with a consistent structure, and predictable interactions. He cannot work at a production rate pace.

(Administrative Record at 15.) Therefore, because the ALJ considered both the medical and non-medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618.

## V. CONCLUSION

The Court finds that the ALJ properly considered the medical evidence and opinions in the record, including the opinions of Dr. Krumvieda and Dr. Harper. Moreover, the Court determines that the ALJ considered the medical evidence, McKeithen's testimony, and the non-medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 6th day of July, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA